IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNION INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SELECTIVE INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | CIVIL ACTION<br>NO. 17-2674 |

**MEMORANDUM OPINION**

Schmehl, J.                                                                      September 11, 2018

**I.**     **INTRODUCTION**

Plaintiff, Union Insurance Company ("Union"), brought suit against Defendant, Selective Insurance Company of America ("Selective"), to recover defense costs that it incurred in defending an insured, Quality Stone Veneer ("QSV") in litigation resulting from a construction project called StoneGate. QSV was insured by both Selective and Union during different years, and Selective initially agreed to provide a defense to QSV, subject to a reservation of rights. Union eventually agreed to also participate in a defense of QSV in the underlying action, and Selective then withdrew its defense and disclaimed coverage. Union asserts Selective's coverage determination and withdrawal was improper and seeks to have this court order Selective to pay one half of all defense expenses incurred by Union in defending QSV. Before the Court is the Motion for Summary Judgment of Selective and Statement of Undisputed Material Facts, and Union's Opposition thereto, as well as Selective's reply. For the following reasons, Selective's motion is granted, and this matter will be dismissed.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. Proc. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 585 F.3d 575, 581 (3d Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The interpretation of an insurance contract is a question of law in which the court must give effect to the plain language of the contract in its entirety. *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) (citations omitted). If the policy language is ambiguous, the provision must be construed in favor of the insured. *Id.* (citing *Med. Protective Co. v. Watkins*, 198 F.3d 100, 104 (3d Cir. 1999); *401 Fourth St., Inc. v. Investors Ins. Grp.*, 583 Pa. 445, 789 A.2d 166, 174 (Pa. 2005)). Contract language is ambiguous when it is reasonably susceptible to more than one construction and meaning. *401 Fourth St., Inc.*, 879 A.2d at 171 (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999)). Still, policy language may not be stretched beyond its plain meaning to create an ambiguity. *Trizechahn Gateway LLC v. Titus*, 601 Pa. 637, 976 A.2d 474, 483 (Pa. 2008). When an insurer disclaims coverage, "the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative

defense." *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996) ("predict[ing] that the Pennsylvania Supreme Court would place the burden [of proof for fortuity] on the insurer").

### III. FACTUAL BACKGROUND

On or about September 8, 2010, StoneGate Condominium Owners' Association ("StoneGate") filed suit in the Court of Common Pleas, Lancaster County against, *inter alia,* Berks Homes and Berks Construction Company (collectively, "Berks"), in an action entitled *StoneGate Condominium Owners' Assoc. v. Berks Homes,* No. 10-05719 (the "StoneGate Action"). (Stmt of Mat'l Facts, ¶ 1.) StoneGate alleged that Berks defectively designed and constructed a twenty-eight (28) unit residential condominium development in Lancaster County, Pennsylvania (the"Stonegate Project"). (*Id.*, ¶ 2.) Specifically, StoneGate alleged that Berks was responsible for certain "design and construction omissions," including, *e.g.,* the alleged improper installation of: stucco, "roof and wall intersection flashings," "window/stucco/stone interfaces," and "window/door flashing details." (*Id.*, ¶ 3.)

On or about May 15, 2012, Berks filed a Joinder Complaint against various parties, including QSV. (*Id.*, ¶ 5.) Berks asserted claims for negligence, breach of warranty and indemnification against the third-party defendants, including QSV, and alleged that if Berks was found liable to StoneGate, such liability was the result of the third-party defendants' defective work on the StoneGate Project. (*Id.*, ¶ 6.) QSV had executed a subcontract on or about November 11, 2005 with Berks to install a 500 square foot manufactured stone façade on the StoneGate Project. (*Id.*, ¶ 7.)

From October 10, 2003 to October 10, 2008, Selective issued five (5) consecutive

3

Commercial General Liability ("CGL") Insurance Policies to QSV, which provided coverage, subject to the Policies' terms, conditions, exclusions and endorsements, for "bodily injury" and/or "property damage" caused by an "occurrence" during the respective policy periods. (Stmt. of Mat'l Facts, ¶ 8.) The Selective Policies define "occurrence" as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*, ¶ 9.) Union thereafter issued a Commercial General Liability Insurance Policy to QSV for the period of October 10, 2009 to October 10, 2010. (*Id.*, ¶ 10.)

On or about June 12, 2012, QSV submitted notice of Berks' third-party action to Selective. (*Id.*, ¶ 11.) On November 2, 2012, Selective issued a Reservation of Rights Letter to QSV, informing QSV that Selective had elected to defend QSV in the Berks Action subject to a comprehensive reservation of Selective's rights, including, *e.g.,* the right to withdraw its defense and disclaim coverage. (*Id.*, ¶ 12.) By letter dated April 22, 2013, Selective tendered QSV's defense to Union (through its agent, Berkley Mid Atlantic Group ("Berkley")). (*Id.*, ¶ 13.) By letter dated May 2, 2013, Union declined Selective's November 2, 2012 tender. (*Id.*, ¶ 14.) After QSV's defense was tendered to Union (through its agent, Berkley) for the second time, on July 22, 2013, Union agreed to provide a defense to QSV in the StoneGate Action. (*Id.*, ¶ 15.) By letter dated October 6, 2014, Selective informed QSV it had elected to withdraw from QSV's defense of the StoneGate Action. (*Id.*, ¶ 16.) On June 13, 2017, Union commenced the instant action to contest the propriety of Selective's withdrawal. (*Id.*, ¶ 17.)

## IV. DISCUSSION

### A. SELECTIVE HAD NO DUTY TO PROVIDE A DEFENSE TO QSV

The interpretation of an insurance contract is a question of law in which the court must give effect to the plain language of the contract in its entirety. *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) (citations omitted). If the policy language is ambiguous, the provision must be construed in favor of the insured. *Id.* (citing *Med. Protective Co. v. Watkins*, 198 F.3d 100, 104 (3d Cir. 1999); *401 Fourth St., Inc. v. Investors Ins. Grp.*, 789 A.2d 166, 174 (Pa. 2005)). While insurance policies will be construed against the insurer, the insured must still show that their claim falls "within the coverage provided by the policy." *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966) (citations omitted). Then, "[a] defense based on an exception or exclusion in a policy is an affirmative one, and the burden is cast upon the defendant to establish it." *Id.* (citations omitted).

"After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage." *General Accident Ins. Co. of Am.*, 692 A.2d 1089, 1095 (Pa. 1997). An insurer's duty to defend, which "also carries with it a conditional obligation to indemnify," is a legal question based upon the four corners of the policy and the four corners of the underlying complaint. *Id.* "An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." *Am. & Foreign Ins. Co. v. Jerry's Sports Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010). Courts may examine "only the allegations in the complaint when determining whether the insurance

5

company must defend the insured." *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 238 (3d Cir. 2010).

In the instant matter, Selective withdrew its defense of QSV in the underlying matter because it determined that the claims in the StoneGate Action did not result from an "occurrence" as defined by the Selective policies. The relevant policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." There is extensive case law in Pennsylvania holding that the definition of accident required to find an occurrence under insurance policies cannot be based upon claims of faulty workmanship. *See, e.g. Kvaerner Metals Division v. Commercial Union Ins. Co.,* 908 A.2d 888 (Pa. 2006); *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.,* 941 A.2d 706, 718 (Pa. Super. 2007); *Specialty Surfaces, supra*; *Westfield Ins. Co. v. Bellevue Holding Co.,* 856 F.Supp.2d 683, 702 (E.D. Pa. 2012); *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.,* 2012 WL 895451, at *2, 6 (E.D. Pa., Mar. 16, 2012); *Bomgardner v. State Farm Fire & Cas.*, 2010 WL 3657084, at *4 (E.D. Pa., Sept. 14, 2010); *Meridian Mut. Ins. Co. v. James Gilligan Builders*, 2009 WL 1704474, at *6 (E.D. Pa., June 18, 2009); *Peerless Ins. Co. v. Brooks Sys. Corp.,* 617 F.Supp.2d 348, 356-57 (E.D. Pa. 2008).

Further, in a case involving the same Selective policies and parties but a different construction project, the Honorable Lawrence F. Stengel of this Court found that under the policies, Selective had no duty to defend QSV in an underlying action involving faulty workmanship claims. *Quality Stone Veneer, Inc. v. Selective Ins. Co. of America*, 229 F.Supp.3d 351 (E.D. Pa., Jan. 23, 2017). The Court also stated that even if the

allegations of faulty workmanship by QSV were "brought under the guise of a negligence claim," there was still no "accident," and thus "no occurrence." *Id.* at 358-59.

In this matter, the claims contained in the complaint in the StoneGate Action allege "design and construction omissions," including improper installation of stucco, "roof and wall intersection flashings," "window/stucco/stone interfaces," and "window/door flashing details." Clearly, these are claims for faulty workmanship and are therefore not covered under the Selective policies because they did not result from an "occurrence." Further, the Joinder Complaint filed by Berks in the third-party action also does not trigger a coverage obligation by Selective. It incorporates by reference the facts contained in the complaint in the StoneGate Action, and further states that faulty construction consisted of, "latent defects and deformities in the stucco in the condominium units, leaking around windows, underperforming systems, and other alleged defects in the construction and condominium units." These are all allegations of faulty workmanship. The Joinder Complaint also alleges claims against QSV for negligence, breach of warranty and indemnification. However, none of these claims or allegations trigger any coverage obligation for Selective under the policies in question. Therefore, Selective did not have a duty to defend QSV in the StoneGate action.

### B. SELECTIVE IS NOT ESTOPPED FROM WITHDRAWING ITS DEFENSE

Under Pennsylvania law, "[e]quitable estoppel is a doctrine of fundamental fairness intended to preclude a party from depriving another of a reasonable expectation, when the party inducing the expectation knew or should have known that the other would rely to his detriment upon that conduct." *TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F.Supp.2d 439, 456 (M.D. Pa. 2013) (quoting *Straup v. Times Herald*, 423 A.2d 713, 720 (1980), overruled

on other grounds by *Kreutzer v. Monterey Cty. Herald Co.*, 747 A.2d 358 (2000)). In the insurance context, "there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon." *Titan Indem. Co. v. Cameron*, 2002 WL 242346, at *2 (E.D. Pa. Feb. 19, 2002) (quoting *Wasilko v. Home Mut. Cas. Co.*, 232 A.2d 60, 63 (1967)).

In the instant matter, Selective initially agreed to provide a defense to QSV and preserved its coverage defenses by sending a reservation of rights letter to its insured. Specifically, QSV was informed that although Selective was providing a defense in the StoneGate Action, Selective expressly reserved the right "to withdraw any legal defense we provide for you" and to disclaim coverage. Approximately two years later, Selective withdrew its defense of QSV, after Union had agreed to participate in a defense of their mutual insured[1]. The fact that Selective defended the case for some time before denying coverage does not somehow turn the defense it did provide into fraudulent inducement. *See Argonaut Great Cent. Ins. Co. v. Phil's Tavern, Inc.*, 2001 WL 1346327, at *4 (E.D. Pa. Oct. 29, 2001). Nor does it turn QSV's decision to allow Selective to provide them with a defense into detrimental reliance. *Id.* at *5.

Pennsylvania law does not state that "the duty to defend automatically 'attaches' at the outset of the litigation and cannot afterwards terminate." *Commercial Union Ins. Co. v. Pittsburgh Corning Corp.,* 789 F.2d 214, 218 (3d Cir. 1986). Further, it has been held that an insurer that had expressly preserved its coverage defenses by issuing a reservation of rights letter was not equitably estopped from withdrawing its defense, even if it had

---

[1] It is noteworthy that the actual insured under the Selective policies, QSV, did not object to or any way contest Selective's withdrawal of its defense.

defended the insured for several years before withdrawing. *See Nationwide Prop. & Cas. Ins. Co v. Shearer*, 650 F. App'x 115, 118 (3d Cir. 2016).

Union makes much of the fact that Selective withdrew its defense of QSV but did not also withdraw the defense it provided to Berks Home in the StoneGate Action. Union argues that it was "unconscionable" for Selective to withdraw its defense of QSV's uncovered claims, but not its defense of Berks Home. However, I find this argument to be unpersuasive, as the policies issued by Selective to QSV and Berks Home were completely separate policies that were completely unrelated to each other. Plaintiff fails to cite to, and this court cannot locate, any case that states that an insurance company's handling of one insured's claim somehow binds it with respect to its handling of a different insured's claim. Accordingly, Selective's withdrawal of its defense was proper.

**V.**     **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted and this case is dismissed. An appropriate order follows.